# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JAR CAPITAL, LLC, d/b/a JOYOLOGY,
a Michigan limited liability company,

     Plaintiff,

v.

CITY OF AUBURN HILLS,
a Michigan Municipal Corporation,

     Defendant.

Case No.

Hon.

**COMPLAINT AND
JURY DEMAND**

4909-8068-1764_1

## <u>COMPLAINT AND JURY DEMAND</u>

Plaintiff  JAR Capital, LLC, d/b/a Joyology complains against defendant City of Auburn Hills as follows:

## <u>PARTIES, JURISDICTION AND VENUE</u>

1.       Plaintiff JAR Capital, LLC, d/b/a Joyology ("Joyology") is a Michigan limited liability company doing business in the City of Auburn Hills, Michigan.

2.       Defendant City of Auburn Hills is a Michigan municipal corporation located in Oakland County, Michigan.

3.       The Court has jurisdiction over this action under 28 U.S.C. § 1331 because Joyology asserts claims arising under the United States Constitution and 42 U.S.C. § 1983.

4.       The Court has jurisdiction over this action under 28 U.S.C. § 1343(a)(3) and (4) because Joyology seeks to redress the deprivation, under color of state law, of rights secured by the United States Constitution.

5.       The Court has supplemental jurisdiction over Joyology's state law claims under 28 U.S.C. § 1367(a) because such claims arise from the same set of operative facts and are so related to Joyology's claims arising under the U.S. Constitution and 42 U.S.C. § 1983 that they form the same case or controversy and the claims are most efficiently resolved together in one court.

1

6.      Venue is proper in the Court under 28 U.S.C. § 1391(b)(1) and (b)(2) in this judicial district.

## COMMON ALLEGATIONS

### *Michigan Regulation Taxation of Marihuana Act.*

7.      In 2018, Michigan voters approved Proposal 1 to legalize, regulate and tax marihuana in the state.

8.      In December 2018, the Michigan Legislature passed the Michigan Regulation and Taxation of Marihuana Act ("MRTMA"), creating a regulatory framework to license and regulate the grow, process and retail sale of recreational and adult-use marihuana. MCL §333.27951, *et. seq.*

9.      MRTMA permits municipalities to regulate adult-use marihuana establishments but does not mandate that municipalities adopt ordinances allowing MRTMA facilities. Accordingly, under MRTMA a municipality may adopt an opt-out ordinance.

10.      MRTMA also provides that individuals may petition a municipality to "initiate an ordinance to provide for the number of marihuana establishments allowed within a municipality or to completely prohibit marihuana establishments within a municipality, and such ordinances shall be submitted to the electors of the municipality at the next regular election when a petition is issued by qualified electors in the municipality." MCL §333.27956(1). This is the only voter-initiated

2

power given to individuals with regard to the local regulation of marihuana. *See City of Farmington v. Farmington Survey Comm.*, ___ Mich. App. ___, ___; ___ N.W.3d ___ (2024) (Docket No. 372022); slip op at 20; 2024 Mich. App. LEXIS 6801.

11.    MRTMA mandates that if a municipality adopts an ordinance that limits the number of adult-use marihuana establishments that may be licensed within its boundaries, the municipality shall decide the number of competing applications by a competitive process intended to select applicants who are best suited to operate in compliance with MRMTA within the municipality. MCL §333.27959(4).

### *Auburn Hills Ballot Initiative.*

12.    In 2022, a group called "Say Yes to Auburn Hills" presented a ballot initiative petition pursuant to MRTMA to enact a local ordinance to allow for adult-use marijuana establishments in the City. **Exhibit 1** – Auburn Hills Proposed Ballot Initiative.

13.    "Say Yes to Auburn Hills" was formed by Jeff Yatooma ("Yatooma") under his company Canna Zoned MLS real estate business. Yatooma and Canna Zoned have been behind several ballot initiatives in other municipalities throughout Michigan. **Exhibit 2** – Crain's Detroit Business Article dated June 23, 2023.

14.    The Crain's Detroit Business article further reported on the "monopolistic" Auburn Hills marijuana licensing scheme between the City and Yatooma. See Ex. 2.

15.     Yatooma designed the ballot initiative to assure that he would be the only individual who could qualify to receive all four adult-use marihuana establishment licenses as it included pre-conditions that effectively limited the eligible applicants.

16.     The ballot initiative contained invalid zoning regulations imposing a regulatory scheme for licensing and regulation of adult-use marijuana establishment licenses with the City of Auburn Hills. Ex. 1.

17.     Specifically, the initiated ordinance provided that the City would only allow  marihuana activities within a building located on a parcel in which the individual or entity to hold the license has a pre-recorded interest and CRA pre-qualification status before 30 days after the ballot question was certified by the County Clerk. Ex. 1.

18.     The ballot question was certified by the County Clerk on August 9, 2022.

19.     On November 8, 2022, a majority of the voters of Auburn Hills approved the ballot-initiated ordinance.

20.      On December 5, 2022, the City adopted Auburn Hills Ordinance No. 22-934 (the  "Ordinance") which provided the process and procedures for applying for one of the adult-use marihuana establishment licenses in accordance with the

requirements of the ballot initiative. **Exhibit 3** – Auburn Hills Ordinance No. 22-934.

21.     The Ordinance mandated that the City was required to allow at least four adult-use marihuana establishments in the City. Ex. 3.

22.     Section 5(d) of the Ordinance mandated that "the City shall allow marihuana activities only within a building located on a parcel in which the individual or entity to hold a state license to operate has a recorded interest and CRA pre-qualifications status before 30 days after the ballot wording this ballot question is certified to the county clerk pursuant to MCL 168.642(A)." Ex. 3.

23.     Therefore, to qualify for one of the four licenses, an applicant was required to have a pre-recorded interest in a building or property on or before September 9, 2022, which was prior to approval by the voters of Auburn Hills. As such, this all but guaranteed Yatooma with a virtual monopoly. In other words, because he was the drafter of the ballot-initiated ordinance, he was in a prime position to secure a pre-recorded interest in four properties within the time frame set forth in the ordinance.

24.     Section 18-234 (b)(3) of the Ordinance provides: Applications "must be complete" and must be in compliance with Section 5 of the initiated ordinance (pre-recorded interest requirement). If deficiencies are not corrected within 10

business days, the application documents will be returned to the prospective applicant. Ex. 3.

25.     Section 18-234(d)(4) of the Ordinance provided: "[i]n order for an adult use marihuana establishment application to be approved and a municipal license issued, <u>ALL</u> [of] the following must be met: …(b) The community development department has confirmed that the proposed location complies with section 18-232, section 5 of the initiated ordinance…" Ex. 3.

26.     Section 18-232(d)(5) of the Ordinance also provides that after review by city departments, but prior to city council approval, applicants are given 30 days to correct any deficiencies. If corrected, then the city council can consider the application for approval. If the deficiency is not corrected, "the application will be deemed incomplete and denied. Another application will then fill the municipal license slot." Ex. 3.

### *The City Establishes an Application Window.*

27.     On July 5, 2023, seven months after adopting the Ordinance, the City opened a thirty (30) day window for applicants to submit applications to receive adult-use marihuana establishment licenses. The application window closed on August 9, 2023.

28.     Prior to opening the application window, the City had already accepted four applications from Green Stones, LLC, Peace Stone, LLC, Epoch Stone, LLC

and Berserker Group, LLC ("Yatooma Entities"), all entities owned and controlled by Yatooma.

29.     The City has given no justification as to why Yatooma was allowed to submit four applications prior to the opening of the application window.

30.     During the application window, the City received eight applications for the four available licenses from the following applicants and property locations:

- Arctic Lakes, LLC - 3325 University Drive;

- Attitude Wellness, LLC d/b/a Lume Cannabis Co ("Lume") - Lapeer Road;

- Berserker Group, LLC - 2705 Lapeer Road;

- Epoch Stone, Inc - 2561 Lapeer Road;

- Frequency Wellness, LLC - 2705 Lapeer Road;

- Green Stones, Inc - 2548 Lapeer Road;

- Jar Capital, LLC d/b/a Joyology - 1930 Opdyke Road; and

- Peace Stone, LLC -1801 N. Opdyke Road.

### *The Joyology Application.*

31.     Joyology timely submitted its complete and comprehensive application for a proposed state of the art 1,500 square foot adult-use marihuana establishment to be located at 1930 N. Opdyke Road, in the City of Auburn Hills. ("N. Opdyke Property").

7

32.     Joyology's application provided detailed documentation related to the proposed   renovation   of   the   N.   Opdyke   Property,   including   all   the   necessary information   required   under   the   Ordinance.   Specifically,   Joyology's   application included:

- Hazmat plan;

- Business operations plan;

- A security plan;

- Site plans;

- Building plans;

- Floor plans;

- A hazmat plan;

- A marketing plan;

- Signage plans;

- Planned   physical   area   improvements,   including   physical improvements to the area around the property;

- Plans for mitigating the impact of odor to adjacent areas;

- A inventory and record keeping plan;

- Evidence of all necessary sales tax licenses;

- A plan proposal for proper disposal of store contents;

- Detailed security plans with state-of-the-art surveillance equipment

4909-8068-1764_1

and physical on site security;

- A technology plan; and

- Staffing plans, including the hiring of plans to hire local residents and detailed social equity program.

33.     Most importantly, Joyology possessed a pre-recorded interest in the N. Opdyke Property as of September 9, 2022 and, therefore, met the initial requirement to be considered for one of the four adult-use marihuana establishment licenses.

34.     Joyology's application was comprehensive and otherwise covered all aspects of the Ordinance and qualified to move forward in the selection process to be recommended to receive an adult-use marihuana establishment license.

35.     After receiving eight applications, the City deferred consideration of the applications on six separate occasions.

### *The Lume Lawsuit.*

36.     On March 6, 2024, Lume filed a Complaint for Declaratory Relief against the City. **Exhibit 4** – Lume Complaint.

37.     The Lume lawsuit requested that the court declare that the ballot initiative ordinance was unenforceable on the grounds that (1) it purports to restrict the City's authority which greatly exceed the narrow scope of initiative authority under MRTMA; and (2) it includes zoning restrictions that cannot be enacted via a ballot initiative. Ex. 4.

38. Specifically, Lume took exception to section 5(d) of the ballot-initiated ordinance which provided that for an individual or entity to hold the state license to operate, it was required to possess a pre-recorded interest and CRA pre-qualification status before 30 days after the ballot wording of this ballot question is certified to the county clerk. Ex. 4.

39. Lume's objection to the ordinance stemmed from the fact that it did not have a pre-recorded interest in location/property that met the requirements of the initiated ordinance and was therefore disqualified from consideration for one of the adult-use marihuana establishment licenses.

40. Thereafter, both the City and Lume filed cross-motions for summary disposition. **Exhibit 5** – Auburn Hills' Motion for Summary Disposition.

41. In its motion, the City argued that by enforcing Section 5(d) of the initiated Ordinance the City was complying with the wishes of its voters:

> "The City in establishing and implementing the process of accepting the applications for the four adult use marihuana establishment licenses required in the City of Auburn Hills has attempted to hoor and respect the wishes, mandate and directive of the voters of the City of Auburn Hills who overwhelmingly voted in favor of the Initiated Ordinance, including but not limited to the provisions of Section 5 and more specifically, Section 5(d) of the initiated Ordinance." Ex. 4 at p. 7.

42. Additionally, the City made it clear that the Lume application was rejected from consideration because it did not meet the requirements of Section 5(d) of the Ordinance:

"In the instant case, the Plaintiff Attitude Wellness, LLC's application for one of the four adult use marihuana establishment licenses was accepted by the City of Auburn Hills and on January 26, 2024, the City rejected the Plaintiff's application on the grounds that the Plaintiff did not meet the requirements of Section 5(d) of the Initiated Ordinance and other related provisions of Ordinance 22-934." Ex. 4. at p. 17.

43.     On October 3, 2024, the cross-motions for summary disposition were adjourned to allow for the City and Lume to engage in settlement discussions. See **Exhibit 6**. Ultimately, the City and Lume reached a settlement whereby the City agreed to grant Lume one of the four adult-use marihuana establishment licenses, contrary to the City's position in the lawsuit and contrary to the requirements of the ballot-initiated ordinance.

### *The Auburn Hills City Manager Scores the Applications.*

44.     On October 16, 2024, the City issued a Notice of Public Meeting stating that the city manager and his designees were scheduled to conduct the final grading of the adult-use marihuana establishment license applications on October 25, 2024. **Exhibit 7** – Notice of Public Meeting. Remarkably, this notice was sent out even though just one week earlier, the City sent out a notice postponing the processing and reviewing all applications for 60 days.

45.     Section 18-234 of the Ordinance provides that each application shall be scored and ranked from best suited until all slots are filled pursuant to the following scoring categories:

a. Review of the applicant's completely submitted, detailed application (including plans which address the provisions of this section and related provisions, such as security, light, processing, handling of hazardous waste, site plans, recordkeeping, disposal, water/utility, ventilation, odor, etc.), which illustrates compliance with the locational requirements of section 18-232 and section 5 of the initiated ordinance, likely success of the proposed business, and harmony of the proposed site with surrounding properties;

b. Whether the applicant is currently in default/arrears on any taxes or fees otherwise due to the City, has a history of noncompliance or violations with City ordinances or applicable laws, or has been served any complaint or notice filed by or with any public body regarding the delinquency in the payment of any tax required under federal, state or local law;

c. Whether the applicant is/was a business operating in the City of Auburn Hills with the past two years;

d. Whether the applicant has a history of criminal conviction/plea, other than as specified by MRTMA, MCLA 333.27958(1)(c), as may be amended;

e. Whether the applicant has ever applied for or has been granted any commercial license or certificate issued by a licensing authority in Michigan or any other jurisdiction that has been denied, restricted, suspended, revoked, or not renewed, or has proceedings pending related to such;

f. Whether the applicant filed, or had filed against it/him/her, a proceeding for bankruptcy or has been involved in any formal process to adjust, defer, suspend or otherwise work out payment of a debt in the past seven years;

g. Whether there is a planned future outreach on behalf of the proposed business and whether the applicant has made, or plans to make, significant physical improvements to the building housing the adult use marihuana establishment;

    h.   Whether the applicant has taken steps to encourage employee retention, attract highly capable workers, train employees, and any other employee-employer factors tending to show a successful workforce. Ex. 3.

***The City Disregards the Ballot Initiated Ordinance Requirements and Implements an Improper Scoring and Selection Process.***

46.    On October 25, 2024, a review committee meeting took place to rank the applicants. The review committee was made up of the city manager, the city clerk, assistant city manager and director of community development.

47.    Pursuant to the MRTMA and its own Ordinance, the City was required to implement a selection process to select applicants through a competitive process designed to select the applicants best suited to operate its facility based on an objective and competitive process and subject to the provisions set forth in the Ordinance. *Ord.* §18-234(c).

48.    The City instituted a scoring guide to score applicants based on assigned points from zero (0) to three (3) points and a recommendation would be given to the four applicants that received the highest score.

49.    Pursuant to the Ordinance, there were to be eight categories in which applications can be awarded points. The selection committee assigned points in each category based on the application materials presented to the City.

50.    Each applicant was allotted time to make a presentation to the committee regarding their respective applications. Joyology and all other applicants

made a presentation to the review Committee. However, Lume and the Yatooma Entities did not appear at the meeting, nor did they make a presentation.

51.     The review committee scored the applications and recommended the Lume application and three of the Yatooma entities receive the four adult-use marihuana establishment licenses. **Exhibit 8** – Summary of Scoring.

52.     As set forth above, the review committee scored the Lume application even though the City previously rejected the application because Lume does not possess a pre-recorded interest in its proposed location as of September 9, 2022, under the requirements of the ballot-initiated ordinance.

53.     The review committee's decision to score the Lume application and its decision to recommend Lume to receive one of the four licenses violates the plain language of the ballot-initiated ordinance which did not allow for the approval of a municipal license unless the city had confirmed that the proposed location complies with section 18-232, section 5(d) of the initiated ordinance.

54.     Furthermore, in scoring the Green Stones, Peace Stone and Epoch Stones application submitted by Yatooma, the review committee inconsistently and improperly applied the scoring criteria set forth in the Ordinance based on their history of past debt adjustment proceedings, the Yatooma applications each received the 2-point allotment for having fully met the requirements of this section. In so doing, the review committee failed to consider Yatooma's long history of cannabis

related disputes and deceitful business practices that call into question his fitness to receive a license under section Sec. 18-234 (c)(4)(f) of the Ordinance.

55. The review committee and the City Attorney were aware that Yatooma is currently a named party in a debt adjustment proceeding in the case of *Value Investors, LLC v Jeffrey Yatooma, et. al*, Oakland County Circuit Court No. 2021-188165-CB. Despite this, the review committee failed to take these facts into account when scoring the Yatooma applications.

56. The Value Investors lawsuit involves a $6 million debt re-payment/restructuring involving Yatooma's former cannabis business partner. In the case, Judge Warren made a finding that Yatooma is in contempt of court for failing to pay the above amount pursuant to a judgment rendered against him and in favor of the plaintiff. **Exhibit 9** – Order of Judge Warren.

57. Furthermore, Yatooma has a long and notorious history of deceitful business tactics in municipalities throughout Michigan and other jurisdictions including but not limited to exploiting a gun violence victim to cheat the Illinois social equity program in connection with obtaining cannabis licenses in the state of Illinois. **Exhibit 10** – Jeff Yatooma Articles.

58. Under the section scoring applications for planned community outreach, the City scored the three prevailing Yatooma applications with the full allotment of three points under the Ordinance for its purported donation to the City.

59.     On the other hand, the review committee failed to properly score Joyology's application consistent with the Ordinance as it failed to take into account, not only a community contribution of up to $100,000 but the fact that **Joyology** was making a capital investment into the N. Opdyke Property of approximately $400,000.

60.     Moreover, at the meeting, the city manager did not make any reference to the pending Lume litigation and the fact that the City had taken the position in the litigation that Lume did not qualify to receive a license under Section 5(d) of the Ordinance and therefore was disqualified from consideration.

61.     On November 11, 2024, the City held a meeting and unanimously adopted the recommendations of the city manager. **Exhibit 11** – November 11, 2024, Meeting Minutes.

62.     At the meeting, several city residents appeared to protest and objected to the Yatooma Entities receiving three of the four adult-use marihuana establishment licenses. This was covered by local tv stations: Auburn Hills residents raise concerns over cannabis licensing - CBS Detroit; Community divided over marijuana licensing plan in Auburn Hills.

63.     As set forth above, the City's application process and purported ranking of the applicants failed to comply with the ballot-initiated Ordinance and MRTMA's

4909-8068-1764_1

requirement for a competitive selection process which resulted in Joyology's application being denied.

## COUNT I
## VIOLATION OF THE U.S. AND MICHIGAN CONSTITUTIONS: EQUAL PROTECTION CLAUSE - CLASS OF ONE DOCTRINE

64.     Joyology incorporates the preceding paragraphs as if fully restated here.

65.     Amendment XIV of the United States Constitution, § 1 states in pertinent part, "[n]o state shall make or enforce any law which shall … deny to any person within its jurisdiction the equal protection of the laws."

66.     The Michigan Constitution provides that "[a]ll political power is inherent in the people. Government is instituted for their equal benefit, security and protection." Mich. Const. 1963, art. 1, § 1. It further guarantees that "[n]o person shall be denied the equal protection of the laws'' Mich. Const. 1963, art. 1, § 2.

67.     The equal protection clauses under the U.S. and Michigan Constitution's guarantee the right to equal treatment from the government and prohibit laws and the application of laws that invidiously discriminate between similarly situated individuals.

68.     Joyology is similarly situated to the four applicants that were awarded adult-use marihuana establishment licenses by the City.

69.     The ballot-initiated ordinance created a class of one when the ordinance required all applicants to possess a pre-recorded interest and CRA pre-

qualification status 30 days after the ballot question was certified by the City Clerk.

70.     As set forth above, the City did not disqualify Lume's application even though Lume was embroiled in pending litigation with the City in which the City had taken the position that Lume did not qualify to receive a license under Section 5(d) of the Ordinance.

71.     As set forth above, the City also ignored and did not take into consideration the numerous issues related to the Yatooma applications.

72.     Joyology's application was just as worthy, if not more so, then the Lume application and the City's unequal treatment of Joyology's application violates the equal protection clauses of the U.S. Constitution and the Michigan Constitution.

73.     The City's unequal treatment is an unreasonable and arbitrary denial of Joyology's application and does not bear any real nor substantial relation to public, health, safety and welfare.

74.     The City's unequal treatment of Joyology's application does not advance a governmental interest, and the City is acting in bad faith.

75.     As a direct and proximate result of the City's unequal treatment of Joyology, Joyology has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.

76.     As a direct and proximate result of the City's violation of Joyology's

rights of equal protection, Joyology has suffered and is entitled to recover compensatory damages, cost and attorney fees.

**COUNT II**
**VIOLATION OF THE U.S. AND MICHIGAN CONSTITUTIONS:**
**SUBSTANTIVE AND PROCEDURAL DUE PROCESS VIOLATIONS**

77.     Joyology incorporates the preceding paragraphs as if fully restated here.

78.     Amendment XIV of the United States Constitution holds, in pertinent part: "nor shall any state deprive any person of life, liberty, or property without due process of Law."

79.     The Due Process Clause of the Michigan Constitution provides that "[n]o person shall ... be deprived of life, liberty or property, without due process of law." Const. 1963, art. 1, § 17.

80.     All acts alleged herein of the City, its officers, agents, employees, elected or appointed officials, or persons acting at its behest or direction, including but not limited to the city manager, assistant city manager, city attorney, city clerk, directory of community development and zoning officials, have been and are continuing to be done under the color and presence of law.

81.     The City, its officers, agents, employees, elected or appointed officials, or persons acting at its behest or direction, including but not limited to the city manager, assistant city manager, city attorney, city clerk, directory of community development and zoning officials, have failed in their duties to Joyology and have

19

engaged in a policy, practice, and pattern of violating Joyology's rights to procedural and substantive due process under the U.S. and Michigan Constitutions by depriving Joyology of other vested property rights without due process.

82. The City's policy, practice and pattern is unreasonable, arbitrary, and capricious, such that it shocks the conscious as evidenced by the community and local media's presence at the meeting.

83. Under the Due Process Clause of the U.S. Constitution and the Michigan Constitution, Joyology has a liberty interest in its use and treatment of its property.

84. The rights derived to Joyology under the property and the use of the property, are property rights under the U.S. and Michigan Constitutions.

85. As set forth herein, the City its officers, agents, and employees at the November 11, 2024, City Council meeting awarded four adult-use marihuana establishment licenses to properties that were zoned B-1 and B-2, respectively.

86. At that same meeting, the City adopted a text amendment approving the location of adult-use marihuana establishments at each of the four respective locations.

87. Joyology and the public received no prior public hearing or posting of the text amendment prior to its adoption at the city council meeting. Additionally, the four properties were "spot zoned" at the same hearing approving the issuances

of the four licenses in violation of the MZEA.

88.    The City's arbitrary and unreasonable conduct as alleged herein has deprived Joyology of its vested property rights in violation of the U.S. and Michigan Constitution's guarantees of due process.

89.    As a direct result of the City's violation of Joyology's rights of due process, Joyology has suffered and is entitled to recover compensatory and nominal damages, costs and attorney fees.

**COUNT III**
**VIOLATION OF MRTMA**
**(FACIAL CHALLENGE)**

90.    Joyology hereby incorporates the proceeding paragraphs as if fully restated here.

91.    MRTMA authorizes local governments to either adopt ordinances prohibiting adult-use marihuana establishments or permitting and regulating adult-use marihuana establishments within their jurisdiction. MCL 333.27956(1).

92.    MRTMA authorizes a petition to initiate an ordinance, only, to completely prohibit or limit the number of adult-use marihuana establishments allowed within a municipality. MCL 333.27956(1). This is the only voter-initiated action given to individuals regarding the local regulation of marijuana, and a petition that exceeds that authority should not be placed on a ballot. *City of Farmington*,

21

(Docket No. 372022); slip op at 20. This ballot-initiated ordinance exceeds that authority.

93.     As set forth above, Section 5(d) of the Auburn Hills ballot-initiated ordinance attempts to regulate and restrict the number of qualified applicants that are eligible to apply for and receive the four adult-use marihuana establishment licenses.

94.     Specifically, the Auburn Hills ballot-initiated ordinance limits the eligible applicants to those individuals or entities that held a state license to operate that had a pre-recorded interest in the property 30 days after the ballot initiative was approved by the City. In so doing, it gave a virtual monopoly to Yatooma, the author of the ballot initiative and violated the mandates of MRTMA.

95.     A municipal ordinance may not stand if it is in direct conflict with the state's statutory scheme. *Morgan v. United States DOJ*, 473 F. Supp. 2d 756, 769 (E.D. Mich. 2007) (citing *People v. Llewellyn*, 401 Mich. 314, 326; 257 N.W.2d 902 (1977)). A direct conflict exists when "the ordinance permits what the statute prohibits, or the ordinance prohibits what the statute permits." *Attitude Wellness, LLC v. Vill. of Pinckney*, 606 F. Supp. 3d 624, 634 (E.D. Mich. 2022) (citing *Ter Beek v. City of Wyoming*, 495 Mich. 1, 19-20; 846 N.W.2d 531 (2014)).

96.     An actual case or controversy exists because Joyology respectfully contends that, on its face, the City's ballot-initiated ordinance violates MRTMA.

**COUNT IV**
**VIOLATION OF MRTMA**
**(AS APPLIED CHALLENGE)**

97.    Joyology incorporates the preceding paragraphs as if fully restated here.

98.    Alternatively, the City failed to implement a process intended to select the applicant "best suited" to operate in compliance with MRTMA and with its own Ordinance and further inconsistently and improperly applied the scoring criteria as set forth in the Ordinance.

99.    As set forth above, the City's purported scoring and ranking of the application directly conflicts with MRTMA as several of the criteria are not designed to select the applicants best suited to operate in compliance with MRTMA within the City.

100.   The City failed to comply with the ballot-initiated ordinance by agreeing to score the Lume application, an application that the City admitted did not have a pre-recorded interest in it proposed location on or before September 8, 2022.

101.   For the reasons described herein, Joyology was improperly denied an adult-use marihuana establishment license as a result of a review and selection process that was implemented contrary to and in violation of MRTMA.

**COUNT V**
**VIOLATION OF MICHIGAN ZONING ENABLING ACT**

102.   Joyology incorporates the preceding paragraphs as if fully restated here.

103.   Zoning Ordinances regulate commercial businesses of various types

23

4909-8068-1764_1

into multiple business districts that are grouped together based upon several factors, including but not limited to density of the use and impacts on the surrounding properties and the community as a whole.

104.    The Michigan Zoning Enabling Act ("MZEA"), MCL 125.3201 *et seq*., authorizes a legislative body of a local unit of government to provide by ordinance the manner in which regulation and boundaries of districts or zones shall be determined.

105.    The MZEA requires a legislative body to conduct a public hearing before the adoption of a zoning ordinance or any amendment to it. MCL 125.3401.

106.    The MZEA also requires newspaper publication of advance notice of the public hearing before adoption of a zoning ordinance or amendment. MCL 125.3403.

107.    The MZEA does not provide for adopting zoning regulations by initiatory petitions.

108.    During the November 11, 2024, Auburn Hills city council meeting, the city awarded four adult-use marihuana establishment licenses to properties that were zoned B-1 and B-2, respectively.[1] Ex. 11.

109.    At the same meeting, the Auburn Hills city council meeting adopted a

---

[1] The City meeting minutes reflect that the Lume Property was zoned B-2 but its own published Zoning Map shows that the property is located in I-2.

text amendment that approved the zoning of all four adult-use marihuana establishment locations at the respective locations. Ex. 11.

110.   There was no prior public hearing or posting of the text amendment prior to its adoption at the city council meeting. Additionally, the four adult-use marihuana establishment properties were "spot zoned" at the same meeting approving the issuances of the four adult-use marihuana establishments licenses.

111.   The proposed text amendment violates the MZEA.

## COUNT VI
## VIOLATION OF THE CITY OF AUBURN HILL'S MARIHUANA ORDINANCE

112.   Joyology incorporates the preceding paragraphs as if fully restated here.

113.   The Court has the authority to declare the rights and other legal relations of Joyology and the City hereto and that an actual case and controversy exists between the parties which the Court has jurisdiction to hear and determine.

114.   The City had a legal duty to follow its mandatory process for awarding adult-use marihuana establishment licenses as prescribed by the City's ballot-initiated ordinance.

115.   The City's process for awarding and reviewing applicants was in violation of its ballot-initiated Ordinance as it accepted, ranked and improperly scored the Lume application; improperly ranked and scored the Joyology application; and improperly ranked and scored the three Yatooma applications as described herein.

116.   Joyology requests that the Court declare, among other things, that the City failed to adhere to its own procedures and substantive requirements as set forth by its ballot-initiated ordinance and MRTMA.

## COUNT VII
## PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

117.   Joyology incorporates the preceding paragraphs as if fully restated here.

118.   Federal Rule of Civil Procedure 65 authorizes the issuance of preliminary and permanent injunctive relief. The issuance of injunctive relief is committed to the discretion of the court. *Ne. Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006).

119.   The object of injunctive relief is to preserve the status quo so that the rights of the parties may be finally determined without injury to any of them before final judgment. *Becker v. Granholm*, 272 F. Supp. 2d 643, 649 (E.D. Mich. 2003).

120.   The City's issuance of any licenses to Lume and the Yatooma entities would cause irreparable injury to Joyology before its rights can be fully adjudicated.

121.   The Court must evaluate the following four factors: (1) the likelihood that Joyology will be successful on the merits; (2) whether the injunction will save the Joyology from irreparable harm; (3) the harm that will be caused to the other parties if the injunction is issued; and (4) whether the public interest will be served by the injunction. *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689-90 (6th Cir. 2014).

26

4909-8068-1764_1

122.   Joyology has a strong likelihood of success on the merits of the Complaint. As set forth above, the City's ballot-initiated Ordinance and its evaluation process violates both MRTMA and the plain requirements of the Ordinance.

123.   Irreparable harm to Joyology will result in the absence of injunctive relief as:

     a.   Joyology has expended considerable time, effort, money, and other resources to obtain a license to operate a marihuana retail business in Auburn Hills, including purchasing the N. Opdyke Property;

     b.   Joyology's right to receive a lawful and fair selection process has been violated;

     c.   Joyology's ability to have their rights fully adjudicated will be irreparably harmed if the City is allowed to issue any marihuana retail business licenses; and

     d.   Joyology has no adequate remedy at law.

124.   The harm to Joyology if the injunction is not granted far outweighs any harm to the City if the injunction is granted.

125.   The City does not suffer any harm if the Court enjoins the City from implementing an Ordinance that is at-odds with state law and is constitutionally deficient.

126.   The public interest is served by granting an injunction as MRTMA was enacted by a majority of the voters in the State to make marihuana available at

licensed retail facilities. This can only be accomplished when municipalities adhere to the substantive requirements of MRTMA.

**COUNT VIII**
**<u>DECLARATORY RELIEF</u>**

127.   Joyology incorporates the preceding paragraphs as if fully restated here.

128.   Pursuant to Federal Rule of Civil Procedure 57 and the Declaratory Relief Act, 28 U.S.C. §§ 2201 and 2022, the Court has the authority to declare the rights and other legal relations of Joyology and the City hereto and that an actual case and controversy exists between the parties which the Court has jurisdiction to hear and determine.

129.   Joyology requests a declaration that the ballot-initiated ordinance is unenforceable and legally constrains the City's legal authority in violation of MRTMA and MZEA.

130.   Joyology also requests a declaration that the actions of the City to date with respect to consideration and review of applications for adult-use marihuana establishments under the ballot-initiated ordinance are materially defective and in violation of the MRTMA.

131.   Joyology respectfully requests that the Court expedite this matter pursuant to Fed. R. of Civ. Pro. 57.

28

## <u>REQUEST FOR RELIEF</u>

**WHEREFORE**, Joyology respectfully requests the Honorable Court to find

in favor of Joyology and enter Judgment against the City of Auburn Hills as follows:

A.   Declare and adjudge that the Auburn Hills Ballot-Initiated Ordinance violates MRTMA and MZEA;

B.   Declare and adjudge that the adult-use marihuana establishment licenses awarded by the City were based on a materially defective process, including but not limited to the licenses awarded to Lume, Green Stones, Inc, Peace Stone, LLC and Epoch Stone, Inc be declared null and void;

C.   Declare and adjudge that Joyology should have been awarded one of the four adult-use marihuana establishment licenses;

D.   Declare and adjudge that the City's actions constitute a violation of the MRTMA, and the adult-use marihuana establishment licenses awarded by the City must be declared null and void;

E.   Issue a preliminary and permanent injunction barring the City from issuing a final license to the adult-use marihuana establishment licenses to Lume and the Yatooma Entities as their selection was contrary to the terms of the Ballot-Initiated Ordinance and based upon a materially defective and evaluation process implemented by the City;

F.   Enter a judgment that the City violated Joyology's constitutional rights of equal protection and right to due process because Joyology has been treated differently from other similarly situated applicants;

G.   Award Joyology their damages, attorney fees and costs; and

H.   Award any such further or different relief as may be deemed just or appropriate.

4909-8068-1764_1

## **<u>JURY DEMAND</u>**

Plaintiff JAR Capital, LLC d/b/a Joyology hereby demands a trial by jury of all claims and issues so triable.

Respectfully submitted,

BODMAN PLC

By: <u>/s/ J. Adam Behrendt</u>       
    J. Adam Behrendt (P58607)
    Debani T. Gordon Lehman (P83909)
    Sinéad G. Redmond (P85718)
 201 W. Big Beaver Road, Suite 500
 Troy, Michigan  48084
 248-743-6000
 abehrendt@bodmanlaw.com
 dgordon@bdomanlaw.com
 sredmond@bodmanlaw.com
 Attorneys for Plaintiff

March 6, 2025

30